[Crim. No. 14371.   Second Dist., Div. One.   Mar. 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID
LEONARD MARSH, Defendant and Appellant.

Philip Jefferson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—On December 3, 1968, this court filed its opinion, *People* v. *Marsh* (Cal.App.) 73 Cal.Rptr. 458, affirming the judgment herein. Thereafter on January 29, 1969, the Supreme Court of the State of California granted appellant's petition for hearing, transferred the matter to it and retransferred the same to this court with directions.[1]

A jury found defendant guilty of robbery (§ 211, Pen. Code), attempted murder (§ 664, Pen. Code) and mayhem (§ 203, Pen. Code); it further found the robbery to be first degree and that defendant was armed with a deadly weapon at the time of the commission of the robbery (count I) and attempted murder (count II). Defendant was sentenced to the

---

[1]This court is "directed to vacate its judgment and, after making appropriate modifications to the text of its opinion, to refile the same with the following dispositive order: The judgment is modified by striking therefrom the finding 'that defendant was armed as alleged,' and adding to the order that 'Execution on Counts 2 and 3 stayed until defendant serves sentence on Count 1,' the further direction, that such stay to become permanent when the sentence as to Count 1 has been fully served. In all other respects the judgment is affirmed.''

state prison for the term prescribed by law; execution of sentence on counts II and III was stayed until the sentence on count I is served. He appeals from the judgment and order denying motion for new trial. The appeal from the order is dismissed.

On December 9, 1966, around 10:40 p.m. Nicholas Joiner was in the office of his motel when the doorbell rang; he found a couple who wanted accommodations. Defendant stood a few steps behind the couple. Joiner invited them in; he knew defendant from prior visits and they referred to each other by name. Defendant asked if he could put him up for the night. Joiner left defendant at the registration desk while he showed the couple to their quarters; when he returned he saw defendant standing in the office. At the moment he entered defendant said to Joiner, "I have got a pistol. I am going to hold you up" and fired three bullets into Joiner's head. He felt defendant's hand go into his left hip pocket and remove his wallet containing $60, driver's license and credit cards. As a result of the shooting Joiner lost his eyesight. A few minutes later Mrs. James, a resident of the motel, came to the office and he told her he had been shot and robbed. Joiner had observed the gun used by defendant which had a white bone handle and resembled a gun he kept on his desk in his office; on the night of the incident the gun was in plain sight. He and defendant had discussed the weapon on one of defendant's prior visits. Mrs. Joiner, who had met defendant once in 1963, looked for her husband's gun after the shooting but was unable to find it.

Welda Marsh, defendant's wife, testified she was in room 5 or 6 of the motel on the night of the shooting for purposes of prostitution; she heard the shots and went to the office; she saw Joiner lying on the floor bleeding; she immediately went home and saw defendant lying in bed drinking; the motel is about two blocks from her home; she told her husband that she didn't want to get involved and left for Texas; defendant left for Texas in the latter part of December 1966.

Defendant did not testify.

Appellant's first assignment of error is that the prosecution violated his wife's privilege not to be called as a witness against him and that after she said "in effect" she did not want to testify against him, she was compelled to do so through subtle pressure. The record shows that Welda

Marsh freely and voluntarily waived her privilege not to testify against her husband.[2]

Welda Marsh was first called by defendant as his witness. She testified that she and defendant were married and had one child; they moved into the motel where they stayed for about two months; later she returned after she and her husband separated and lived alone in the motel for about two months; again she left and returned a third time living alone for about a month and a half and the fourth time she returned to the motel she stayed about three weeks. On cross-examination the prosecutor asked, ''Do you know where your husband was, ma'am, on December 9, 1967 [sic]'' to which objection was made on the ground that it was beyond the scope of the direct examination; the objection was sustained. The prosecutor then asked permission to take the witness as his own, and counsel proceeded at the bench out of the hearing of the jury. Considerable discussion concerning section 971, Evidence Code, ensued whereupon in the absence of the jury the prosecutor on *voir dire* examination laid a foundation for her further testimony. He questioned Mrs. Marsh concerning her marriage to defendant—she had no marriage license, only a receipt, and had been married in Tijuana. After *voir dire* examination by defense counsel concerning her marriage, the prosecutor asked the following questions to which Mrs. Marsh gave the following answers:

''Q. Was this your first or second marriage?

''A. Can I refuse to answer that?

''THE COURT: No. It's a proper question. Answer it. Is this—

''THE WITNESS: This is the first time.

''THE COURT: This is the first marriage?

''THE WITNESS: Yes.

''THE COURT: The one you have shown me the certificate of?

''THE WITNESS: Yes.

''Q. BY MR. BUGLIOSI [deputy district attorney]: Why did you hesitate before answering that question?

''A. Because he was telling me not to answer.

---

[2]Section 970, Evidence Code: ''Except as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding.''

Section 971, Evidence Code: ''Except as otherwise provided by statute, a married person whose spouse is a party to a proceeding has a privilege not to be called as a witness by an adverse party to that proceeding without the prior express consent of the spouse having the privilege under this section unless the party calling the spouse does so in good faith without knowledge of the marital relationship.''

"THE COURT: That is, your husband down here?

"THE WITNESS: Right.

"THE COURT: We will have no more of that, Mr. Marsh. Do you understand?

"Q. BY MR. BUGLIOSI: As a matter of fact, ma'am, this was your second marriage, right? You had been married before that?

"A. No, no. I have never been married before.

"Q. You hesitated then—

"A. He told me not to answer. That's why I wasn't going to answer.

"THE COURT: I didn't hear him say anything.

"THE WITNESS: No, he was telling me—he was shaking his head.

"MR. FITZGERALD [defense counsel]: If the record—I might state for the record—and I think Mr. Thompson will concur— that the defendant was making arm motions and pointing to sealing his lips in some fashion, indicating to her not to answer.

"THE BAILIFF: That's correct, your Honor.

"THE COURT: The ruling will remain the same.

"Q. BY MR. BUGLIOSI: Ma'am, do you wish to answer any questions that I may ask you in front of the jury with respect to what your husband was doing on December the 9th?

"Do you wish to do that or not? You have the right not to.

"A. I will answer in front of the jury.

"Q. You are willing to answer in front of the jury—

"A. Yes.

"Q. —what your husband was doing on December the 9th?

"A. Yes."

Then Mr. Fitzgerald, defense counsel, further questioned Mrs. Marsh on *voir dire* relative to her willingness to testify:

"Q. Do you understand, Mrs. Marsh—

"THE COURT: Wait a minute.

"Q. BY MR. FITZGERALD: —that you can refuse to testify as to any new matter?

"A. Yes.

"Q. You do understand that?

"A. Yes.

"Q. And you wish to testify?

"A. Yes.

"Q. Even though it may be unfavorable to your husband?

"A. Yes."

Thereafter before the jury, asked by the prosecutor where defendant was on December 9, 1966, Mrs. Marsh answered that he was at home in Los Angeles. No objection was raised to the question because the record shows that Mr. Fitzgerald well understood that under the pertinent sections of the Evidence Code "the privilege runs in favor of the witness" and from the foregoing testimony, that her "prior express consent was obtained." (§ 971, Evid. Code.) It is readily apparent that defendant's wife knew and fully understood her privilege not to testify and knowingly waived the same. At the outset her hesitation in answering the question relative to her marriage was the admitted result not of her unwillingness to testify but of pressure exerted on her by defendant through his motions to her as he sat at the counsel table; defense counsel even described for the record what motions defendant made in his effort to silence her. Thereafter she freely and voluntarily continued to answer questions and as a result of further interrogation by the prosecutor and defense counsel's explanation to her of her privilege not to testify against her husband and his own questions of her, she reiterated that she understood she could refuse to testify but wished to do so even though it might be unfavorable to defendant.

Appellant claims that the admission in evidence of his statements to the police was prejudicial error in that they were procured in violation of his rights to counsel and to remain silent because he was not told he had a right to have counsel in Texas during interrogation there and Officer Traphagem had in mind appointed counsel through the Los Angeles public defender's office.

The following was received through the testimony of Officer Traphagem after the court granted the prosecution's request to reopen its case in chief; the judge "admitted [it] on the theory that it is a false statement, indicating consciousness of guilt" and for that "limited purpose," and at the request of defense counsel the jury was specifically so instructed. Officer Traphagem had a conversation with the defendant at the sheriff's office in Fort Worth, Texas, on February 11, 1967; he advised defendant of his constitutional rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] [3] and to the question whether he understood

[3]"A. First of all, I advised him of the reason we were arresting him, the charges against him.

"I then advised him he had the right to remain silent.

"I advised him that he had the right to have an attorney present through all stages of the proceedings.

"I advised him that if he could not afford an attorney, we would

those rights, defendant said he did. Officer Traphagem asked defendant if he had anything to do with the case; defendant answered that he had arrived in Fort Worth on December 1, 1966, had not left since that time, and had four substantial witnesses in Fort Worth who would place him there at the time. While later on *voir dire* examination the officer testified that it was the public defender's office in Los Angeles he had in mind when he advised defendant that an attorney would be provided for him if he could not afford one, nothing in the record establishes that he communicated this to defendant or that defendant knew what the officer had in his mind; defendant did not take the stand. Nor is there any suggestion that defendant was misled into believing that counsel would not be furnished him in Fort Worth if he requested one; to the contrary, Officer Traphagem specifically advised him that he had a right to have an attorney present "through all stages." The source of such legal aid, under the state of this record, would appear to be immaterial. The record does not show that defendant was told he could not have counsel in Fort Worth while being interrogated, or that he requested counsel and the same was denied. In any event, from the warnings given by Officer Traphagem defendant could reasonably assume that either in Fort Worth where he was arrested or in Los Angeles, counsel would be provided upon his request; and we can assume under the circumstances of this case that had defendant made the request either counsel would have been furnished or no questions would have been asked of him.

██ Without merit is appellant's final contention that he was not adequately represented in the trial court. His complaints are based primarily on counsel's conduct of his defense with reference to the admission of his wife's testimony and that of Officer Traphagem. The record shows that defense counsel made a valiant effort to keep out the testimony of both witnesses but without success. Other objections he now makes are trivial and completely unsupported by the record. In particular we refer to appellant's claim that his counsel should have moved for a dismissal under section 1382,

provide an attorney for him either through the courts or the Public Defender's Office.

"I also advised him that anything he may say could be used against him.

"Q. Did you ask him if he understood those rights?

"A. I did, sir.

"Q. What did he say?

"A. He said he understood them."

subdivision 2, Penal Code, on the ground that the trial was commenced in excess of 60 days after the filing of the information. The motion would have been denied for the information was filed April 3, 1967, the trial was set for May 24, 1967, and the minute order of that date reveals that the cause was called for trial and continued to June 28, 1967 ''at the request of the defendant,'' beyond the 60-day limit.

It was the judgment of the trial court that ''defendant be punished by imprisonment in the state prison for the term prescribed by law, on said counts. Execution on counts II and III stayed until defendant serve sentence on count I.'' However, the judgment also recites that the jury found defendant guilty of first degree robbery (count I), attempted murder (count II) and mayhem (count III) and that defendant was armed as alleged. The information alleged in connection with counts I and II that at the time of the commission of the offenses charged therein ''defendant was armed with a deadly weapon, to wit, a revolver.'' In our former opinion we modified the judgment by striking therefrom the finding ''that defendant was armed as alleged.'' Thus, in accord with the order of the Supreme Court of the State of California, the judgment is further modified by therein adding to ''Execution on Counts 2 and 3 stayed until defendant serves sentence on Count 1,'' the direction ''such stay to become permanent when the sentence as to Count 1 has been fully served.'' In all other respects the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.